# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD WHITE,**

    **Plaintiff,**

    v.                                          Case No. 2:18-cv-159
                                                JUDGE GEORGE C. SMITH
                                                Magistrate Judge Kimberly A. Jolson

**JOSH VANBIBBER,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 18).[1] The motion is fully briefed and ripe for disposition. For the following reasons, Defendants' Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Richard White alleges that while in the custody of the Southeastern Regional Jail following an arrest for a probation violation, he was denied medical and mental health treatment over a period of three days. (Doc. 1, Compl. ¶¶ 11, 21–27). Prior to his arrest, his doctor prescribed a detox and tapering program to gradually and safely discontinue the benzodiazepines he had been taking. (*Id.* ¶¶ 8–9, 17). White's doctor sent a fax to the jail on February 26, 2016, the day White was arrested, informing the jail of the prescribed detox and tapering program. (*Id.*

---

[1] The county commissioners for Hocking, Morgan, and Vinton Counties filed a motion to dismiss White's Complaint on April 13, 2018. (Doc. 10). All Defendants later filed a second Motion to Dismiss on April 26, 2018 (Doc. 18), and all parties stipulated that the later motion was filed on behalf of all defendants and included the same arguments made in the earlier motion. (Doc. 19). The parties further stipulated that White need only respond to the later motion filed on behalf of all Defendants. (*Id.*).

¶ 17). The jail sent a fax back to White's doctor stating that the jail had its own withdrawal protocol and that they would monitor White's vitals. (*Id.* ¶ 18). However, despite White's repeated requests, the jail never provided White with any medication or allowed him to speak with a doctor or mental health professional during his detention. (*Id.* ¶¶ 21–28).

On February 28, 2016, while still in the jail's custody, White alleges that he was distraught, confused, and suffering from withdrawal from benzodiazepines. (*Id.* ¶ 29). He alleges that he climbed over a railing to reach a second story ledge as a direct and proximate result of not receiving medical attention from the jail. (*Id.* ¶ 30). After standing on the ledge for approximately 20 minutes (during which time he received no assistance or attention from jail personnel), White jumped from the ledge onto the concrete floor below and suffered extensive injuries. (*Id.* ¶¶ 30–35).

White commenced this action on February 23, 2018 against Josh VanBibber, Warden of the Southeastern Ohio Regional Jail, as well as the county commissioners of Hocking, Morgan, Vinton, Perry, and Athens Counties, Ohio. (Doc. 1). His Complaint contains twelve claims for relief: claims under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights, violation of substantive due process, and supervisor liability (Counts 1–3); conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 (Count 4); violation of his Eighth Amendment rights (Count 5); negligence, gross negligence, and negligent supervision (Counts 6–8); negligent and intentional infliction of emotional distress (Counts 9–10); violation of Ohio Administrative Code § 5120:1-8-09 (Count 11); and punitive damages (Count 12).

White's Complaint did not specify whether he was suing each defendant in their individual or official capacities. In his memorandum in opposition to Defendants' Motion to Dismiss, White clarified that he intended to pursue his federal claims (Counts 1–5) against Defendants in their

2

official capacities and to pursue his state law claims (Counts 6–12) against Defendants in their individual capacities. (Doc. 21, Resp. at 2). The Court will treat White's claims accordingly in evaluating Defendants' Motion.

## II. STANDARD OF REVIEW

Defendants bring this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes,*

*Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Defendants have moved to dismiss all of White's claims. The Court will address each claim in turn.

### A. § 1983 claims (Counts 1–3)

As clarified by White in his opposition brief, he asserts his § 1983 claims against Defendants in their official capacities. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, (1978)). Where, as here, a plaintiff seeks to hold a political entity liable under § 1983 for the actions of its employees, the analysis is governed by *Monell v. New York City Dep't of Soc. Servs.* 436 U.S. 658.

In *Monell,* the Supreme Court explained that municipal liability under § 1983 may attach only where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of. *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004) (quoting *Monell*, 436 U.S. at 694). Therefore, to prevail on these claims, White must show (1) that he suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation. *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017).

It is the second requirement that Defendants primarily challenge. The Sixth Circuit has explained that a plaintiff asserting a § 1983 claim on the basis of a municipal custom or policy must "identify the policy, connect the policy to the [municipal entity] itself and show that the

particular injury was incurred because of the execution of that policy." *Graham*, 358 F.3d at 382. Defendants argue that White has not alleged how any particular policy of the jail caused him any injury. The Court agrees.

All White alleges regarding any putative policy of the jail is that "a nurse from the Jail sent a fax to Dr. Bonner informing Dr. Bonner that the Jail had its own withdrawal protocol and that they would monitor White's vitals." (Doc. 1, Compl. ¶ 18). This paragraph plausibly alleges the existence of a withdrawal protocol, but not its contents. White acknowledges as much in his opposition brief when he states that "[e]ither the Jail's withdrawal/detox protocol is no medications at all or the Jail did not follow its own protocol." (Doc. 21, Resp. at 9–10). In other words, White has no idea what the Jail's policies are regarding medication, withdrawal, or detox; he therefore also has no idea whether the denial of medication was in conformity with or in violation of those policies. As a result, he is not able to plausibly allege that execution of the jail's policy resulted in the denial of his medication and the subsequent injuries he sustained when jumping from the ledge.

This failure is fatal to White's § 1983 claims. Accordingly, Counts 1–3 will be dismissed.

**B.    § 1985 conspiracy claim (Count 4)**

To state a § 1985 claim, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518–19 (6th Cir. 2003)). Moreover, the Supreme Court has limited § 1985 claims to conspiracies motivated by *class-based* discrimination:

> That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others . . . . The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

*Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).

Defendants argue that Plaintiff's conspiracy allegations are conclusory and speculative, and the Court must agree. White has done nothing more than recite the elements of a conspiracy claim without alleging any facts in support of those elements. (Doc. 1, Compl. ¶¶ 51–56). Moreover, White's Complaint contains no allegations of any racial or other class-based discriminatory animus. This alone is grounds for dismissal. *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 955 (S.D. Ohio 2010) (Sargus, J.); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 679 (6th Cir. 1976).

**C.     Eighth Amendment claim (Count 5)**

Defendants correctly point out that, because White's alleged injuries occurred prior to trial or conviction for the probation violation that occasioned his detention at the jail, the Eighth Amendment is simply not implicated. *Bass v. Robinson*, 167 F.3d 1041, 1048–49 (6th Cir. 1999) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977)). Instead, as a pretrial detainee, White's substantive right to adequate medical care was guaranteed by the Due Process Clause of the Fourteenth Amendment. *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). That White's right to adequate medical care under the Fourteenth Amendment "is analogous to the right of prisoners under the Eighth Amendment" does not, as argued by White, provide pretrial detainees such as himself with a cause of action under the Eighth Amendment. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). Accordingly, this Count must also be dismissed.

**D.     State law claims (Counts 6–12)**

White asserts his state law claims against Defendants in their individual capacities. (Doc. 21, Resp. at 2). Individual employees of political subdivisions are statutorily immune from suit unless their actions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6)(b). Here, White does not allege the personal involvement of any of the Defendants in the events that led to Plaintiff's alleged denial of medical care. Indeed, none of the Defendants' names are even mentioned in the Complaint outside of the case caption. "Put another way, there is no allegation that any named Defendant ever had any interaction with or knowledge of Plaintiff." (Doc. 21, Reply at 5). White has therefore failed to make any non-conclusory allegations as to how any named Defendant acted with malicious purpose, in bad faith, wantonly, or recklessly. As a result, White's state law claims are barred by statutory immunity and Counts 6–12 are dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.

The Clerk shall remove Documents 10 and 18 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　 */s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**